671 P.2d 1065

Curtis D. JOHNSON and Joan Johnson, husband and wife, Plaintiffs-Appellants,

v.

Daniel A. JONES and Ruth E. Jones, husband and wife, Defendants-Respondents,

and

Roger Schwartz; Joe Threadgill, Herbert Nagel; Elton Suko Realty; Hope Realty; First American Title Company of Northern Idaho, Defendants.

and

PIONEER TITLE COMPANY OF ADA COUNTY, Defendant-Third Party Plaintiff,

v.

GEM VALLEY TITLE COMPANY, Third Party Defendant.

No. 14609.

Supreme Court of Idaho.

Oct. 26, 1983.

Dan J. Rude, Coeur d'Alene, for plaintiffs-appellants.

C.J. Hamilton, Coeur d'Alene, for defendants-respondents.

SHEPARD, Justice.

In August of 1978, plaintiffs-appellants Johnson entered into a contract to purchase Allen's Mobile Homes Accessories, Inc., from defendants-respondents Jones. The Johnsons later filed suit against various defendants including the Joneses, alleging breach of contract and misrepresentation in connection with the sale of the business. The Joneses ultimately prevailed in the lower court, and the Johnsons filed an appeal from that judgment. The Johnsons submitted to the lower court several affidavits regarding their financial status and requested that the filing fee on the notice of appeal and the costs for the clerk's record and court reporter's transcript be waived.

The filing fee was waived by the district court and by this Court. However, the district court later issued an order denying the Johnsons' petition for waiver of costs of the court reporter's transcript and clerk's record, finding that the plaintiffs were not indigent for the purpose of prepayment of reporter's transcript fees or clerk's transcript fees.

The sole issue on appeal is whether the district court erred in denying the Johnsons' petition for waiver of costs and fees.

The applicable statutory provision, I.C. Section 31-3220, provides in pertinent part:

"Inability to pay fees—Affidavit.—(1) The district court ... may authorize the commencement or defense of any civil suit, action or proceeding, or an appeal therein, without prepayment of fees, costs or security therefor, by any person who makes affidavit that he is indigent and unable to pay such costs or give security therefor, whenever the court finds, after informal inquiry, the person to be indigent ....

"(3) The court may, upon the filing of a like affidavit and a finding of indigency, direct that the expense of printing the transcript or record on appeal be paid out of the district court fund of the county in which the civil suit, action or proceeding is filed."

This provision grants the district court discretion to determine whether costs and fees should be waived after the court has made a finding that the petitioning party is indigent.

In this case, the district court found that the Johnsons were not indigent. There appears to be no meritorious argument that the findings of the trial court were erroneous. Those findings indicate that plaintiffs Johnson had a net after tax monthly income of $1,334, largely from social security, since 39-year-old Curtis Johnson is disabled with arthritis; that the Johnsons donate ten per cent of their income to a church and have pledged $800 to support a college; and that Johnsons make no claim they cannot borrow funds. We agree with the order of the trial court that Johnsons have no shown indigency. As to the trial court's remarks relating to the Johnsons' borrowing funds, we note that they have obviously been able to borrow in the past from at least three commercial lenders, including their accrual of a Visa charge account billing of over $900.

Defendants Jones suggest that professional testimony in the trial record demonstrates conclusively that Johnson is a "con artist" and hence was not worthy of belief by the trial court, and that no credence should be given by the court to Curtis Johnson's statements. The trial transcript is not before this Court, and hence we are not privy to the evidence. But we note that the trial judge, during the course of the 12-day trial, had ample opportunity to assess the credibility of Johnson. In a matter of this type, we assign substantial weight to the trial court's discretion and to its exercise of that discretion. *Rueth v.*

*State,* 103 Idaho 74, 644 P.2d 1333 (1982); I.R.C.P. 52(a).

Affirmed.

DONALDSON, C.J., and BAKES and HUNTLEY, JJ., concur.

BISTLINE, Justice, dissenting.

Although I have seen enough of this case that likely I would have upheld a denial of transcripts based on a district court's conclusion that an appeal had little chance of success, I cannot agree that the Johnsons were not indigent, which was said to be so because "[t]here is no allegation that the Plaintiffs do not have the financial ability to borrow funds from commercial lenders or from friends . . . ."

The record demonstrates that the Johnsons were in fact indigent; that monthly expenses of Curtis and Joan Johnson slightly exceeded their monthly income; that they had outstanding debts and judgments against them totaling over $18,000; that they had no assets which they could have sold in order to raise the amount of money needed to finance the appeal. Borrowing from anyone but a moron was out of the question. The Johnsons simply did not have the assets which lenders require. Their monthly expenses exceeded their monthly income, Curtis Johnson is totally disabled, and in my experience lenders want to know how money borrowed will be paid back.

It has always been the policy of this state to provide for indigent persons. In 1864, the Indigent Sick Act was enacted to provide for "the care, protection, and maintenance of the indigent sick." Similarly, in 1883, the territorial legislature enacted the first Poor Act to provide for the poor who were not sick. Provision is still made for sick and indigent persons through Chapters 34 and 35 of Title 31 of the Idaho Code. Just as the state has provided aid to indigent persons in need of medical attention, so has it always provided legal assistance to persons accused of serious crimes. Article 1, § 13 of the Idaho Constitution guarantees that "[i]n all criminal prosecutions, the party accused shall have the right . . . to appear and defend in person and with counsel." The right of needy persons to counsel is now codified in I.C. § 19–852 ("A needy person who is being detained by a law enforcement officer, who is confined or is the subject of hospitalization proceedings . . ., or who is under formal charge of having committed or is being detained under a conviction of, a serious crime, is entitled . . . to be represented by an attorney to the same extent as a person having his own counsel is so entitled. . . ."). *See* I.C. §§ 19–853(c) and 19–856. Similarly, under I.C. § 16–1809A, the Youth Rehabilitation Act, an indigent youthful offender is entitled to an order of the court providing legal representation. *In re Dunmire,* 100 Idaho 697, 604 P.2d 711 (1979).

With the enactment of I.C. § 31–3220, the Idaho legislature extended its policy of providing for indigent persons into the area of civil litigation. The wisdom of this provision is not for this Court to judge; our only task is to apply the legislature's act, which is not ambiguous. The message the Court today sends forth is that under I.C. § 31–3220 a petition for waiver of costs and fees on appeal in a civil action can be denied if the trial court thinks that the petitioning party should or might be able to borrow money from someone. Tomorrow it may do the same in cases of medical indigency or prosecutions against indigent criminally accused persons. I cannot agree the legislature intended the statute to be applied in such a manner. I would therefore reverse and remand in order that the court determine if the Johnson's appeal was "frivolous, malicious" or "not taken in good faith." I.C. § 31–3220(2). To my mind, it would seem that expenditures of public money for appeal transcripts in civil cases where the court sees little chance of success is tantamount to being an appeal "not taken in good faith."